**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SIDLEY AUSTIN (DC) LLP,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-1871 (RBW) |
| | ) | |
| **CENTERS FOR MEDICARE** | ) | |
| **& MEDICAID SERVICES** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JOINT STATUS REPORT**

This case concerns three Freedom of Information Act requests for records relating to a notice of proposed rulemaking that was published by the Centers for Medicare and Medicaid Services ("CMS") in 2018 ("Requests").  The rulemaking, which concerns audits in the Medicare Advantage program, has not yet been finalized.

Without waiving any rights or arguments that could be raised regarding the Requests, Sidley Austin identified five records or groups of records that were its initial priorities, and CMS agreed to prioritize its search for those records.  CMS's has completed its processing of records related to Sidley Austin's first and fifth priorities.  The agency's processing in response to the remaining three priorities is ongoing.

**Plaintiff's Position**

Categories 1-3:

Unfortunately, another month has passed and the government has missed yet another deadline.  As the Court may recall, Plaintiff's first priority request arose from a .sas code file that CMS posted to its website in connection with a proposed rule.  The file on the agency's website

was dated July 26, 2018, and it stated, "[T]his code is a modification [of] …. ffsa analysis 030718.sas."  Based on that statement, we requested that the government produce the referenced file, "ffsa analysis 030718.sas."  After months of delay and shifting positions, the government finally produced that file on August 30, 2021.

The newly produced file in turn states that "[t]his code is a modification [of] … ffsa_calibration_simulation_ic REG 090517.sas."  Prior to the last status conference, we asked the government to prioritize production of the September 5, 2017 file.  Our understanding was that the government agreed to prioritize that file and any similar .sas code files.  During the last status conference, the government likewise indicated that it would produce that file and similar programming files by October 15, 2021.

The government admits that it has located approximately 22 .sas files, including the September 5, 2017 file.  These are ASCII text files that can be opened with any word processing software (including the text editors that are a default part of every modern operating system). The government seeks to excuse its failure to produce these files by revising downward the scope of its commitment—it now claims to have agreed to produce only files that "were simply earlier versions of the previously-released programming file." (*Infra.*)  This is an ex post rationalization, but it also fails on its terms.  Just as the July 2018 file on CMS website was "a modification" of the March 2018 file (which the government has now produced), the March 2018 file was "a modification" of a September 2017 file that the government is refusing to produce.  By any reasonable definition, the September 2017 file stands as an "earlier version" of the code that was "previously released."

Making matters worse, the government has not indicated how long it will take to process the September 2017 file or the other .sas files. The government has not even provided an

*estimate* of the length of time needed.  Plaintiff submits that this represents a failure to proceed with reasonable diligence—after all, there are only 22 files at issue.  A diligent agency should be able to process 22 programming files in a matter of days, not months.

It is no excuse at all for the government to say that the FOIA office "is not full of computer programmers and data scientists."  (*Infra*.)  The FOIA office is not the defendant in this litigation, CMS is.  And the agency quite clearly has the technical ability, both in house and through contractors, to interpret its own files.

In addition to the programming files, the government has indicated that the directories that were at issue in Plaintiff's second and third prioritized requests contained one HTML file, two Word files; three PDF files; five text files; five LST files; seven Excel files; and seven data files.  In other words, a total of only thirty additional files.  Even though the total number of documents is quite small, the government has refused to provide even an estimate of the time needed to process them.  Indeed, even in its proposal below, the government requests that it be given another month, after which it will merely "update the Court on its analysis of these technical files and its plans for processing them."  The government thus asks to kick the can down the road without committing to actually *doing* anything.

Given the government's failure to proceed in a diligent manner, Plaintiffs request that the Court order CMS to complete its production of all materials responsive to the first three priority requests by a date certain.  Plaintiffs submit that November 15, 2021 would provide more than sufficient time.

Category 4:

With respect to the fourth priority request (i.e., documents related to CMS's prior study), CMS previously represented that its renewed searches identified approximately 14,000 records that had not been located by its original searches (ECF No. 29). Plaintiff continues to believe that this is a manageable number of documents, which could reasonably be reviewed by the government over the course of 3-4 months. That said, in an effort to help narrow the scope of the review, plaintiff has asked the government to prioritize the production by file type; the government has indicated that it does not have any objection in principal to doing so. The government has also provided plaintiff with a list of the search terms that it ran for priority category 4 with the number of hits generated by each term. The parties plan to further confer regarding whether there is a way to leverage these hit counts improve the efficiency of the review.

**Defendant's Position**

Plaintiff's statement is full of speculation. Sidley Austin mischaracterizes CMS's most recent production agreement, and offers a confident description of documents that it has never seen. CMS has not missed any deadline, despite Sidley Austin's efforts to produce that impression. Although Sidley Austin did not provide their proposal until after 5 pm on a Friday evening, CMS responds and offers its own proposal below.

As the Court is aware, the second and third priority groups of records are the contents of two file folders in the possession of a subcontractor to CMS. The agency obtained custody of those records by August 30, 2021, and has been analyzing them. It has provided generic descriptions and document counts to Sidley Austin. In addition to Adobe PDF, Microsoft Excel,

- 4 -

Microsoft Word, and text files, the folders contain a number of programming and data files,
including SAS, SAS7BDAT, and LST files.  The folders also contain two very large CSV files.
All told, the files are approximately 3 GB large.  The CMS FOIA office is seeking the assistance
of its programmatic offices in analyzing these files and understanding their contents so that it can
assess whether any material is exempt from disclosure under FOIA.  CMS is especially
concerned that no private health information related to Medicare beneficiaries, which was used
in the study to which these records are related, be accidentally released.  It is also concerned that
the agency's protected deliberations not be unintentionally produced.

As the Court is aware, CMS produced a single specified SAS programming file at the end
of August.  That file contained the program on which a published version of an agency study was
run.  Because of the direct correspondence between the programming file and previously
published work, it was relatively simple for CMS to determine that the file was almost
completely non-exempt from disclosure.  In conference with Sidley Austin and before the Court,
it is the recollection of undersigned counsel that CMS agreed to produce or withhold certain SAS
files that were simply earlier versions of the previously-released programming file by today,
October 15.  Undersigned counsel does not believe that CMS ever agreed to complete its
processing of all SAS files by today, nor to produce any specific file that Sidley Austin (which of
course has not reviewed the file) believes to be simply an earlier iteration of previously released
programming language.

CMS has not identified any SAS files covered by this agreement, and therefore has not
made a production today.  Despite Sidley Austin's protestations, the agency has not missed any
deadline.  And the agency is proceeding diligently to complete the processing of records that it
has only had in its possession since August.  The files that CMS has analyzed appear to contain a

considerable volume of material that is unrelated to anything in the previously-released programming file, and that material requires further analysis.  To put it simply, the agency's FOIA staff—which is not full of computer programmers and data scientists—requires the assistance of its programmatic staff to understand the nature of this material and the other technical files before it can make a decision about whether and to what extent the records are subject to FOIA.  Sidley Austin's proposal that CMS be given one additional month to process approximately 3 GB of technical information that the agency's FOIA staff does not presently understand is entirely unreasonable.

CMS suggests instead that the parties be ordered to file a further joint status report no later than November 15, 2021, in which the agency will update the Court on its analysis of these technical files and its plans for processing them.

As to the fourth priority item, the parties will confer further and CMS will begin production once that conference is complete.  Sidley Austin's suggestion that three or four months should be sufficient to process 14,000 documents (which likely total many hundreds of thousands of pages) is as unreasonable as its other proposals, but the parties may be able to further narrow the scope of the documents to be processed.

                                               Respectfully submitted,

                                               BRIAN M. BOYNTON
                                               Acting Assistant Attorney General

                                               MARCIA BERMAN
                                             Assistant Director, Federal Programs Branch

                                             */s/ James Bickford*
                                             JAMES BICKFORD
                                             Trial Attorney (N.Y. Bar No. 5163498)
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street, NW

Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

and

*/s/ Kyle J. Fiet*
William A. Sarraille (Bar ID # 431872)
Sean C. Griffin (Bar ID # 499537)
Kyle J. Fiet (Bar ID # 988894)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
wsarraille@sidley.com
sgriffin@sidley.com
kfiet@sidley.com
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Counsel for Plaintiff*

Date: October 15, 2021